# United States Court of Appeals for the Federal Circuit

---

**DOUGHERTY ELECTRIC, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1458, 2024-1838

---

Appeals from the United States Court of Federal Claims in No. 1:20-cv-01254-LAS, Senior Judge Loren A. Smith.

---

Decided: July 15, 2026

---

MATTHEW AARON HUGHES, Fox Rothschild LLP, Greenville, SC, argued for plaintiff-appellant. Also represented by IAN M. COMISKY, MATTHEW D. LEE, Philadelphia, PA; MATTHEW NIS LEERBERG, Raleigh, NC.

RACHEL IDA WOLLITZER, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRUCE R. ELLISEN, DAVID A. HUBBERT.

---

Before LOURIE, PROST, and TARANTO, *Circuit Judges*.

PROST, *Circuit Judge*.

Dougherty Electric, Inc. ("DE") sued the government in the U.S. Court of Federal Claims, seeking a refund of fraud penalties and interest it had paid to the IRS. The court dismissed DE's complaint for lack of subject-matter jurisdiction upon concluding that DE had not timely filed a proper refund claim with the IRS before bringing suit. We affirm the dismissal in part, albeit for a different reason—namely, that DE failed to state a claim upon which relief can be granted. We otherwise vacate the dismissal and remand for further proceedings.

## BACKGROUND

This case concerns the requirement that a taxpayer seeking a refund must file a claim with the IRS before it sues the government in court. After setting forth certain statutory and regulatory provisions pertaining to this requirement, we recount the relevant factual background.

### I

The pre-suit filing requirement derives from § 7422(a),[1] which states:

> *No suit or proceeding shall be maintained in any court* for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and*

[1] Unless otherwise noted, references to "Section" or "§" are to title 26 of the U.S. Code, a title also known as the Internal Revenue Code.

> *the regulations of the Secretary established in pursuance thereof*.

§ 7422(a) (emphasis added).[2]

Taxpayers must file their refund claims with the IRS within a certain timeframe (or "period of limitation"), which § 6511(a) generally governs. The specifics of § 6511(a) are unimportant here; what matters is that, as the parties do not dispute, the deadline for DE's refund claim with the IRS was December 11, 2017.

Finally, 26 C.F.R. § 301.6402-2 speaks to the required formalities of a refund claim with the IRS. *See* § 7422(a) (requiring that a claim be "duly filed" according to "the regulations of the Secretary"). This regulatory provision states:

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. *The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof*. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

---

[2] References to the "Secretary" and "Commissioner" in language quoted in this opinion are to, respectively, the Secretary of the Treasury and the Commissioner of Internal Revenue (or their delegates, as applicable). For convenience, this opinion's discussion refers to each as the IRS.

26 C.F.R. § 301.6402-2(b)(1) (emphasis added).

## II

### A

Between 2001 and 2005, Donald Dougherty Jr. was DE's sole shareholder.[3]

In 2007, Mr. Dougherty was indicted for, among other things, tax evasion relating to a payroll scheme at DE. He pleaded guilty to most of the charges in the indictment, including tax evasion for the nine calendar quarters from the third quarter of 2003 through the third quarter of 2005 (the "quarters at issue"). In 2008, the U.S. District Court for the Eastern District of Pennsylvania entered judgment on Mr. Dougherty's guilty plea and ordered him to pay restitution to the IRS. The calculation of this criminal restitution included unpaid DE employment taxes (and interest thereon) for the quarters at issue.

After Mr. Dougherty's guilty plea, the IRS conducted a civil audit of DE's employment-tax liabilities. In addition to determining DE's unpaid employment taxes for the quarters at issue, the IRS assessed fraud penalties on those amounts under § 6663.

On December 11, 2015, DE paid the IRS $1,534,504.37. According to DE, this payment was intended to cover its unpaid employment taxes, the fraud penalties, and the associated interest for the quarters at issue. *See* J.A. 20–21. Under § 6511(a), DE's deadline to file a refund claim with the IRS concerning this payment became December 11, 2017 (i.e., two years after the payment).

---

[3] The background facts set forth in this opinion are taken from the complaint and the parties' briefing.

B

On December 7, 2017, just four days before the December 11 deadline, DE submitted a letter to the IRS titled "PROTECTIVE CLAIM FOR REFUND," which stated:

> [DE] is hereby filing a protective refund claim for penalties and interest in the amount of at least $1,534,504.37 paid on December 11, 2015. This payment was made in connection with a restitution-based assessment following the conviction of [DE's] owner for various tax offenses, and included taxes, interest, and fraud penalties. In *Klein v. Commissioner*, 149 T.C. [341 (2017)], the United States Tax Court held that a restitution-based assessment pursuant to . . . § 6201(a)(4) may only be based upon taxes due and owing, and may not include interest or additions-to-tax. The restitution-based assessment in this case must be limited to taxes only, and [DE] is therefore entitled to a refund of all interest and penalties paid, or that should have been allocated to interest and penalties, on December 11, 2015. [DE] also reserves the right to argue that all interest and penalty assessments were invalid and to seek a refund of an additional amount. [DE] therefore files this claim for refund as a protective matter.

Appellee's Br. 7–8 (quoting J.A. 38). This submission, by asserting that the IRS could not assess interest or fraud penalties on a criminal restitution, raised what we refer to as the "*Klein* theory" (after the referenced Tax Court case by that name).

Then, on April 10, 2018, after the deadline had passed, DE submitted another letter to the IRS. This one, titled "MODIFIED PROTECTIVE CLAIM FOR REFUND," stated:

> On behalf of [DE], this letter relates to the protective claim for refund submitted on December 7, 2017[,] for tax years 2002, 2003, and 2004 ("Refund Claim") (a copy of which is enclosed).
>
> [DE] is filing a modified Refund Claim for penalties and interest in the amount of at least $1,534,504.37 paid on December 11, 2015. [DE's] Refund Claim is hereby modified as follows: in addition to [DE's] reliance on *Klein v. Commissioner*, [DE] further asserts that the Commissioner failed to comply with the requirements of . . . § 6751(b)(1). [DE's] Refund Claim is unchanged in all other respects.

Appellee's Br. 9 (cleaned up) (quoting J.A. 43). Referenced § 6751(b)(1) provides: "No penalty . . . shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination . . . ." § 6751(b)(1). This untimely submission thus "further assert[ed]," in addition to the *Klein* theory, that the fraud penalties (and any associated interest) should be refunded because those penalties did not receive appropriate supervisor approval—what we refer to as the "supervisor theory."

On June 19, 2018, the IRS responded to DE's December 7, 2017 submission with two letters. One of them, regarding "the interest portion" of DE's December 7, 2017 submission, said: "[Section] 6201(a)(4) states that a criminal restitution based assessment is treated as tax. Accordingly, as with any tax assessment, if the amount is not paid when due, interest will accrue from the due date until paid in full." J.A. 214. The other, regarding "the penalty portion" of DE's December 7, 2017 submission, said that DE should "submit a copy of the restitution order for review so a final determination can be made"—and that, "[w]hen doing so, [DE] should file a signed Form 843 for each affected annual period." J.A. 217.

Between July and August 2018, DE supplied the IRS with (1) a copy of the requested criminal restitution order and (2) for each quarter at issue, a signed Form 843 specifying the requested refund amount for that quarter. The government refers to these Forms 843 (and other contemporaneous submissions, including the criminal restitution order) as "formal" refund claims, *see, e.g.*, Appellee's Br. 23 (citing J.A. 49–127), and we will do the same.

On or about September 28, 2018, the IRS rejected DE's refund claims.

C

In September 2020, DE sued the government in the Court of Federal Claims, seeking a refund of fraud penalties and interest it had paid for the quarters at issue.

The government moved to dismiss DE's complaint. In doing so, it treated the *Klein* theory and supervisor theory separately. As to the supervisor theory, the government moved under Rule 12(b)(1)[4] to dismiss for lack of subject-matter jurisdiction. It argued that DE did not timely file a proper refund claim with the IRS on that theory before bringing suit and thus that DE failed to comply with § 7422(a). Specifically, the government argued that, while DE's December 7, 2017 submission was indeed timely, it was defective for lacking all the formalities required by the governing regulations. It also maintained that subsequent proceedings at the IRS did not cure such defects (at least with respect to the supervisor theory). In the government's view, this failure to comply with § 7422(a) as to the supervisor theory deprived the Court of Federal Claims of

[4] The Rules referenced in this opinion are the Rules of the U.S. Court of Federal Claims.

subject-matter jurisdiction to adjudicate a refund claim based on that theory.[5]

DE's opposition to the government's motion to dismiss did not dispute that, at least as to the supervisor theory, its timely December 7, 2017 submission lacked all the formalities required by the governing regulations. DE nonetheless maintained that, given the way proceedings at the IRS played out, it should be treated as having complied with § 7422(a)'s pre-suit filing requirement as to that theory. In this respect, DE relied on this court's *Computervision* opinion, where we articulated four "doctrines"—i.e., the informal claim doctrine, the waiver doctrine, the general claim doctrine, and the germaneness doctrine—that could render § 7422(a)'s pre-suit filing requirement satisfied "despite [the taxpayer's] failure to timely file detailed formal claims with the IRS." *See Computervision Corp. v. United States*, 445 F.3d 1355, 1364 (Fed. Cir. 2006); *id.* at 1364–73.

The Court of Federal Claims dismissed the entirety of the complaint for lack of subject-matter jurisdiction. After confirming that it would treat § 7422(a)'s pre-suit filing requirement as jurisdictional, it concluded that DE had not met this requirement as to *any* theory. *See Dougherty Elec., Inc. v. United States*, 168 Fed. Cl. 690, 694–96, 696 n.2 (2023). In particular, the court reasoned that DE's timely December 7, 2017 submission was defective for lacking the requisite formalities—and that none of the four *Computervision* doctrines applied to render § 7422(a)'s pre-suit filing requirement satisfied. For example, the court concluded that the informal claim doctrine did not apply,

---

[5] As to the *Klein* theory, the government moved under Rule 12(b)(6) to dismiss for failure to state a claim, raising various arguments going to the merits of that theory that are irrelevant for present purposes. *See* J.A. 137, 152–57.

because the December 7, 2017 submission failed to specify (among other things) the quarters at issue. In the court's view, this failure meant that the submission did not "fairly apprise[] the IRS of the basis for [DE's] claim." *Id.* at 695. As to the other three doctrines, the court read *Computervision* to say that they could apply only if the taxpayer had timely filed a formal claim with the IRS. *See id.* at 695–96 (citing *Computervision*, 445 F.3d at 1365, 1368, 1370). Because DE had not timely filed a formal claim, the court concluded that none of these three doctrines applied. Accordingly, with the court treating § 7422(a)'s pre-suit filing requirement as jurisdictional and deeming it not satisfied as to any theory, it dismissed for lack of subject-matter jurisdiction.

DE timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review de novo the Court of Federal Claims' dismissal for lack of subject-matter jurisdiction or failure to state a claim upon which relief can be granted. *E.g.*, *Taylor v. United States*, 959 F.3d 1081, 1086 (Fed. Cir. 2020). In doing so, we accept all well-pleaded factual allegations as true and draw all reasonable inferences in DE's favor. *See, e.g.*, *Cotter Corp., N.S.L. v. United States*, 127 F.4th 1353, 1366 (Fed. Cir. 2025).

We first address whether the § 7422(a) compliance issue that the Court of Federal Claims identified deprived it of subject-matter jurisdiction. We then address the merits.

### I

The parties debate whether, if DE failed to comply with § 7422(a)'s pre-suit filing requirement here, that failure would have deprived the Court of Federal Claims of subject-matter jurisdiction. The government says yes—mostly on the strength of *Dalm*, where the Supreme Court characterized § 7422(a) in jurisdictional terms. *See United States*

*v. Dalm*, 494 U.S. 596, 609 (1990) ("For the [trial court] to have jurisdiction over her suit for refund, [the taxpayer] was required to [timely] file a claim for refund [with the IRS] . . . ." (citing §§ 6511(a), 7422(a)). DE says no—citing the Court's more recent admonitions against overreading its prior characterization of something as "jurisdictional." *See Wilkins v. United States*, 598 U.S. 152, 159–60 (2023) ("The mere fact that this Court previously described something without elaboration as jurisdictional . . . does not end the inquiry." (cleaned up)).

We need not resolve this issue here, however, because it makes no difference to our ultimate disposition. Even if complying with § 7422(a)'s pre-suit filing requirement (by filing a refund claim with the IRS that is both timely *and* otherwise deemed proper) is unnecessary for a court's subject-matter jurisdiction, it *is* necessary for a taxpayer's refund claim in court. That means that failure to comply renders the claim in court subject to dismissal anyway, for failure to state a claim upon which relief can be granted. *See, e.g.*, *Dixon v. United States*, 67 F.4th 1156, 1161 n.3 (Fed. Cir. 2023); *Brown v. United States*, 22 F.4th 1008, 1012 (Fed. Cir. 2022). *See generally Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) (addressing the "subject-matter jurisdiction" vs. "ingredient-of-claim-for-relief dichotomy"). Because noncompliance would result in dismissal either way, the jurisdictional distinction would matter here only if DE could excuse its noncompliance on some basis that would be available but for the requirement being treated as jurisdictional. *See Dixon*, 67 F.4th at 1161 n.3.

Equitable tolling of the § 6511(a) deadline is the only basis DE has suggested that could give the jurisdictional distinction meaning here, but such tolling is unavailable due to the Supreme Court's decision in *Brockamp*. There, the Court squarely held that § 6511's deadlines cannot be equitably tolled. *United States v. Brockamp*, 519 U.S. 347, 348, 354 (1997). It reasoned that § 6511's "detail," "technical language," and "explicit listing" of other exceptions—

along with the nature of the subject matter at issue (i.e., tax collection, with all its administrative burdens)—indicated that Congress did not want the open-ended, case-specific treatment that equitable tolling would provide. *Id.* at 352.

DE suggests that *Brockamp*'s no-equitable-tolling holding rested on the Supreme Court's outdated, *Dalm*-based understanding that the § 6511(a) deadline was jurisdictional (the implication being that we might have to resolve the jurisdictional issue after all). But we do not read *Brockamp* that way. Although *Brockamp* cited *Dalm*, it was not for any clear jurisdictional proposition. *See Brockamp*, 519 U.S. at 352 (citing *Dalm*, 494 U.S. at 610, as having "discuss[ed] mitigation provisions" set forth in other sections of the Internal Revenue Code). In fact, the word "jurisdiction" (or a variant) never even appears in *Brockamp*. Instead, the analysis in *Brockamp* concerned whether § 6511's text, structure, and context indicated that Congress did not want equitable tolling to apply. *See id.* at 350–54. Because jurisdictional deadlines—as a *categorical* matter—cannot be equitably tolled, *see, e.g.*, *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 203 (2022), this analysis would have been unnecessary if the Court had been resting merely on the deadline being jurisdictional.

That *Brockamp*'s holding did not rest on jurisdiction is only reinforced by the Supreme Court's recent decision in *Enbridge Energy*. There, the Court considered whether the removal deadline in 28 U.S.C. § 1446(b)(1) could be equitably tolled. *Enbridge Energy, LP v. Nessel ex rel. Mich.*, 146 S. Ct. 1074, 1081 (2026). After observing that jurisdictional deadlines cannot be equitably tolled, the Court confirmed at the outset that the deadline was not jurisdictional. *Id.* It *then* analyzed the statutory provision's text, structure, and context to conclude that, even though not jurisdictional, Congress did not want equitable tolling to apply. *Id.* at 1082–85. In this latter analysis, the Court extensively cited and analogized to *Brockamp*. *Id.*

By separating its jurisdictional analysis from its more comprehensive equitable-tolling analysis—and relying on *Brockamp* only for the latter—*Enbridge Energy* further indicates that *Brockamp*'s no-equitable-tolling holding did not rest merely on some unstated jurisdictional understanding.

In sum, because the jurisdictional issue concerning § 7422(a) is irrelevant in this case, we need not (and do not) resolve it. Instead, insofar as we affirm the Court of Federal Claims' dismissal for failure to comply with § 7422(a)'s pre-suit filing requirement, our affirmance rests on the alternative ground of failure to state a claim upon which relief can be granted. *See, e.g.*, *Dixon*, 67 F.4th at 1161 n.3; *Brown*, 22 F.4th at 1012.

## II

Turning now to the merits, we first articulate the framework relevant here for evaluating whether a pre-suit refund claim with the IRS satisfies § 7422(a). We then apply that framework with reference to DE's proceedings at the IRS—treating the *Klein* theory and supervisor theory separately.

### A

As referenced above, in *Computervision*, we articulated four doctrines that could render § 7422(a)'s pre-suit filing requirement satisfied "despite [the taxpayer's] failure to timely file detailed formal claims with the IRS." *See Computervision*, 445 F.3d at 1364; *id.* at 1364–73.[6]

---

[6] This articulation resulted from our consideration of, in particular, several Supreme Court cases decided over a 12-year span in the 1930s and 1940s. *See Angelus Milling Co. v. Comm'r*, 325 U.S. 293 (1945); *United States v. Kales*, 314 U.S. 186 (1941); *United States v. Andrews*, 302 U.S. 517 (1938); *Bemis Bros. Bag Co. v. United States*,

First, the informal claim doctrine renders "a timely claim with purely formal defects . . . permissible if it fairly apprises the IRS of the basis for the claim within the limitations period" and is followed by an "untimely amendment that complied with the regulations." *See id.* at 1364 (citing, among other authorities, *Kales*, 314 U.S. 186); *accord Dixon*, 67 F.4th at 1162. Second, the waiver doctrine provides that, under certain circumstances, if a timely claim "fails to include the specific claim for relief," that specific claim "may nonetheless be considered timely if the IRS considers [it] within the limitations period." *See Computervision*, 445 F.3d at 1365 (citing, among other authorities, *Angelus Milling*, 325 U.S. 293). Third, the general claim doctrine provides that "an amendment making a [timely] general claim more specific may be permissible even when filed outside the limitations period." *See id.* at 1368 (citing, among other authorities, *Andrews*, 302 U.S. 517; *Factors & Fin.*, 288 U.S. 89; and *Memphis Cotton Oil*, 288 U.S. 62). Fourth, the germaneness doctrine may apply where an untimely amendment "rais[es] a new legal theory—not specifically raised in the original [timely] claim—that is germane to the original claim." *See id.* at 1369–70 (cleaned up) (citing, among other authorities, *Bemis Bros.*, 289 U.S. 28).

B

There is no dispute here that DE's December 7, 2017 submission (its only timely one) was defective, at least because it lacked all the formalities required by the governing regulations. The question is whether, in light of the subsequent proceedings at the IRS, one of the four aforementioned doctrines nonetheless renders § 7422(a) satisfied.

---

289 U.S. 28 (1933); *United States v. Factors & Fin. Co.*, 288 U.S. 89 (1933); *United States v. Henry Prentiss & Co.*, 288 U.S. 73 (1933); *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933).

For the reasons below, we deem § 7422(a) satisfied as to the *Klein* theory but not as to the supervisor theory.

1

Starting with the *Klein* theory, we conclude that the general claim doctrine applies.[7] That is because DE's timely December 7, 2017 submission raised the *Klein* theory, and any missing specifics or formalities in that submission regarding that theory were rectified with DE's formal claims (filed before the IRS's rejection). *See Factors & Fin.*, 288 U.S. at 93 ("[A] general claim for refund, not specifying grounds, is subject to amendment until final rejection irrespective of a limitation running in the interval." (citing *Memphis Cotton Oil*, 288 U.S. 62)).

The government makes just two arguments for why the general claim doctrine does not apply. Neither is persuasive.

First, like the Court of Federal Claims, the government relies on a statement in *Computervision* suggesting that, for the general claim doctrine to apply, the taxpayer must

---

[7] Because we rely on the general claim doctrine as to the *Klein* theory, we need not resolve the parties' dispute over whether DE's timely December 7, 2017 submission needed to specify the years (or quarters) at issue for the informal claim doctrine to apply. *Compare* Appellant's Br. 33–37, *and* Reply Br. 13–16, *with* Appellee's Br. 24–26. To the extent it might be argued that the December 7, 2017 submission's failure to specify the years (or quarters) at issue prevented that submission from benefiting from the general claim doctrine as well, we disagree, at least because there is no indication from the record in this case that the absence of such years (or quarters) prevented the IRS from sufficiently understanding the nature of the *Klein*-theory-based claim or undertaking further investigative efforts to resolve it.

have filed a timely *formal* claim. In that regard, *Computervision* stated: "[T]he general claim doctrine[] exists where (1) the taxpayer has filed a *formal general* claim within the limitations period; and (2) an amendment is filed outside the limitations period that makes the general claim more specific." 445 F.3d at 1368 (emphasis added). To the extent this statement might be read as *requiring*—for purposes of the general claim doctrine—that a "formal general claim" have been timely filed, we conclude that it was dictum that should not be followed.

This statement was dictum, because it was unnecessary to the holding in *Computervision*. There, the taxpayer had timely filed a formal refund claim with the IRS raising a theory of recovery regarding a domestic international sales corporation ("DISC"). *See id.* at 1360, 1365. After later filing *untimely* refund claims with the IRS raising *non*-DISC theories, it argued that the untimely claims should relate back to the earlier, DISC-related claim and thus be deemed timely. *See id.* at 1361, 1363. We concluded that the general claim doctrine did not permit that result, because the earlier, DISC-related claim was too specific to serve as a placeholder for a *different* specific theory that was untimely raised. *See id.* at 1369 (noting that the Supreme Court has "held that where the original timely claim asserted a specific ground, it could not be amended out of time to claim a new basis for relief unrelated to the original claim"). In other words, the problem for the general claim doctrine was *not* that the original, timely claim was not formal; if anything, the problem was that it was *too* "formal" (e.g., too specific) to accommodate a different, specific theory untimely raised. Thus, because nothing about our holding as to the general claim doctrine *required* that an original, timely claim have been formal, the statement suggesting such a requirement amounts to nonbinding dictum.

We also conclude that this statement was an unsound expression of the law and therefore should not be followed.

Notably, the *Computervision* opinion cited no authority for requiring that a timely *formal* claim have been filed in order for the general claim doctrine to apply. *See id.* at 1368. And in fact, just after the opinion suggested such a requirement, it quoted language from the Supreme Court's *Andrews* opinion that undermines any such requirement. In *Andrews*, the Court observed that a timely claim that the IRS "could have rejected as too general" was nonetheless potentially salvageable by the general claim doctrine. *See* 302 U.S. at 524 (quoted in *Computervision*, 445 F.3d at 1368). The Court also made a similar observation in *Memphis Cotton Oil*. There, it stated that, "if the claim as presented is [too] indefinite," the IRS "*may disallow the claim promptly for a departure from the* [*regulation*]"; but if instead the IRS "holds it without action until the form has been corrected . . . , what is before [the IRS] is not a double claim, but a claim single and indivisible, the new indissolubly welded into the structure of the old." 288 U.S. at 71 (emphasis added). The Court thus made clear that the original, timely claim need *not* have complied with all the requisite formalities in order for the general claim doctrine to apply. Indeed, the very purpose of the doctrine is to deem § 7422(a) satisfied *despite* the timely claim lacking all the requisite formalities.

The government attempts to defend the soundness of the aforementioned statement from *Computervision*, but its efforts are unpersuasive. It maintains that, when the opinion referred to the timely filing of a "formal general claim," what it *really* meant was a claim that met all the requisite formalities *except* those prohibiting over-generality. *See* Appellee's Br. 41 (quoting *Computervision*, 445 F.3d at 1368). We disagree that the statement can be defended on this basis. For one thing, the government provides no authority that would support this type of line-drawing—i.e., as to which formalities must be timely complied with in order for the general claim doctrine to apply, and which may be rectified after the deadline. But also, we

agree with DE that a "formal general claim" is something of a contradiction in terms. *See* Appellant's Br. 42–43 (calling it a "square circle"). Typically, the reason for describing a claim as "general" is to convey its failure to "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the [IRS] of the exact basis thereof." *See* 26 C.F.R. § 301.6402-2(b)(1). The generality itself is what prevents the claim from being "formal."

Second, the government argues that DE's December 7, 2017 submission was *too specific* to be a general claim that could benefit from the general claim doctrine. This argument implicates the principle that, if a timely refund claim with the IRS raises a specific theory of recovery, the general claim doctrine does not permit that claim to serve as a placeholder for a *different* specific theory that was untimely raised. *See, e.g.*, *Computervision*, 445 F.3d at 1369 (observing, in the context of this principle, that "the general claim doctrine only applies when the original claim is general rather than specific"). Although this principle is quite relevant to the supervisor theory (and therefore comes up again below), it is inapplicable to the *Klein* theory. DE's timely December 7, 2017 submission was formally defective, but it *did* raise the *Klein* theory. So, to the extent DE relies on its untimely formal claims only to shore up—via the general claim doctrine—any missing specifics or formalities as to the *Klein* theory, those later submissions are not being used to inject a *different* specific theory into the mix as though it were timely raised.

In sum, as to the *Klein* theory, the fact that DE's December 7, 2017 submission was not "formal," or that it raised a specific theory, does not prevent the general claim doctrine from applying. And, because the government has not offered (nor do we see) any other reason why the general claim doctrine would not apply to salvage DE's timely yet formally defective December 7, 2017 submission as to the *Klein* theory, we conclude that this doctrine renders § 7422(a) satisfied as to this theory.

2

For the supervisor theory, none of the four *Computervision* doctrines renders § 7422(a) satisfied.

The informal claim doctrine does not apply, because DE did not "fairly apprise[] the IRS of th[at] basis for the claim within the limitations period." *See Computervision*, 445 F.3d at 1364. DE's December 7, 2017 submission (again, its only timely one) said nothing that would have fairly apprised the IRS of the supervisor theory.

The waiver doctrine does not apply for at least two reasons. First, any IRS waiver of formal requirements (and corresponding consideration of the claim on its merits) must have occurred within the limitations period; and second, any such waiver and merits consideration must have been clear and unmistakable. *See id.* at 1367 (observing that the IRS cannot waive the refund-claim requirements "by conduct outside of the limitations period"); *Angelus Milling*, 325 U.S. at 297–98 ("The showing should be unmistakable that the [IRS] has in fact seen fit to dispense with [its] formal requirements and to examine the merits of the claim. . . . The evidence should be clear that the [IRS] understood the specific claim that was made even though there was a departure from form in its submission."). Here, DE's only timely submission was filed just four days before the deadline, and there is no indication—let alone a clear and unmistakable one—that, in those intervening four days, the IRS waived formal defects as to the supervisor theory and considered that theory on its merits.

The general claim doctrine also does not apply. Because DE's timely December 7, 2017 submission raised a *specific* theory (i.e., the *Klein* theory), it cannot, under the general claim doctrine, serve as a placeholder for a *different* specific theory that was untimely raised (here, the supervisor theory). That is so even where, as here, the timely submission *also* included general language in addition to

the specific theory.[8] *See Computervision*, 445 F.3d at 1369 (citing *Andrews*, 302 U.S. at 525–26).

Finally, the germaneness doctrine does not apply, because the supervisor theory simply was not germane to the *Klein* theory. The supervisor theory concerns § 6751(b)(1) and the extent to which the fraud penalties received any necessary supervisor approval. The *Klein* theory concerns the extent to which interest or fraud penalties could be assessed on a criminal restitution. DE has not adequately explained (nor do we see) what one has to do with the other for purposes of the germaneness doctrine.

## CONCLUSION

We have considered DE's remaining arguments and find them unpersuasive.[9] For the foregoing reasons, we vacate the Court of Federal Claims' dismissal and remand for further proceedings as to the *Klein* theory. On remand, the Court of Federal Claims should take up the government's merits-related arguments for dismissal as to the *Klein* theory. *See supra* note 5. We affirm the Court of Federal Claims' dismissal as to the supervisor theory, on the alternative ground that, because DE did not comply with § 7422(a)'s pre-suit filing requirement as to that theory, it

---

[8] This additional, general language in the December 7, 2017 submission stated: "[DE] also reserves the right to argue that all interest and penalty assessments were invalid and to seek a refund of an additional amount." Appellee's Br. 7–8 (quoting J.A. 38).

[9] This includes DE's argument that the Court of Federal Claims abused its discretion by not amending the judgment to reflect that a motion for leave to file a sur-reply had been granted. *See, e.g.*, Appellant's Br. 46–47 (referencing J.A. 9–10). To the extent the court's decision not to amend the judgment retains any relevance in light of our disposition of the dismissal, that decision is affirmed.

failed to state a claim upon which relief can be granted as to that theory.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

No costs.